UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

JONATHAN A. BERNSTEIN, individually and on
behalf of all those similarly situated,

                Plaintiff,

        -against-

THE CHUBB CORPORATION, FEDERAL
INSURANCE COMPANY, GREAT NORTHERN
INSURANCE COMPANY, JOHN D. FINNEGAN,
and THOMAS F. MOTAMED,

              Defendants.

------------------------------------------------------------ x



**COMPLAINT**

Jury Trial Demanded

Plaintiff, on behalf of himself and all others similarly situated, alleges as

follows against defendants, and each of them (the corporate entities, "Chubb"), on

information and belief, formed after a reasonable inquiry by counsel, except as to himself

and his own actions, which are alleged on personal knowledge:

## INTRODUCTION

1.      Replacement cost insurance policies are a common form of homeowners

insurance. The policies cover "home" and "contents" separately, although typically a single,

aggregate premium is charged and paid for both. If a home or contents covered by a

replacement cost policy is damaged or destroyed, the homeowner is reimbursed to the extent

of the coverage by the insurer according to which payment basis is provided by the coverage.

Policy contracts typically purport to be for one year terms. The acts and practices complained of are common to these variations.

2.   The essential charge in the case is that Chubb improperly obtains premiums by various breaches of its policy contracts with insureds; violations of New York Insurance Law, and deceptive practices. The Chubb Corporation's misconduct is perpetrated in significant part through its insurance subsidiaries, acting under the parent's domination and as the parent's agent, whether apparent or actual. All defendants aid and abet each other toward the shared purpose of securing additional premiums by improper means. Chubb's misconduct is ongoing, warranting injunctive relief. Relief sought herein will be effective and equitable only if all of the parent and of its insurance subsidiaries are made party to it.

3.   This action does not concern itself with Chubb's entitlement to charge a particular rate or premium. Rather, it concerns itself with the breaches of contract, deceptive practices and other violations of law in connection with Chubb's contracts with its customers.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over defendants pursuant to 28 U.S.C. §1332(d). Defendants conduct substantial business in the State of New York, and avail themselves of the consumer markets within New York through the promotion, sale, marketing and/or distribution of insurance products in New York.

2

5.      Plaintiff and the members of the class in this action are New York residents or have insured property located in New York. This matter in controversy exceeds $5.0 million, exclusive of interests and costs, and members of the plaintiff class are citizens of states different from any defendant; the claims primarily involve matters of New York interest. They do not seek disgorgement of any fund in which they have a common and undivided interest, but seek to recover separate and distinct damages along with their attorneys' fees.

6.      Chubb's acts and practices complained of have injured plaintiff and the class by causing him and class members to pay premiums that exceed what the contract permits and the law allows.

7.      Venue is proper as the acts upon which this suit is based occurred in significant part in this County. One or more defendants or its agents or dominated and controlled subsidiaries also maintain offices in this County at 55 Water Street, New York, New York, and members of the class residing in this County purchased homeowners insurance policies from Chubb and have been and continue to be injured thereby.

## PARTIES AND RELATIONSHIPS AMONG THEM

8.      Plaintiff Jon Bernstein resides and at all relevant times has maintained residences in both Suffolk and New York counties. Plaintiff owns a home ["house"] in Easthampton and has had a Chubb extended replacement cost policy and renewals respecting this house at all times between April 9, 1999, and February 6, 2006. Plaintiff also owns a

3

cooperative ("coop") in New York County and had purchased a separate replacement cost policy and renewals with respect to these premises at all times between December 1, 1999 and February 6, 2006.

9. Plaintiff's policies were nominally issued by Great Northern Insurance Company ("Great Northern"). Great Northern is one of the insurance companies within the so-called Chubb Group of Insurance Companies ("Chubb Group"). Each member of the Chubb Group is wholly-owned, directly or otherwise, dominated and controlled by or serving as agent, actually or apparently, for defendant The Chubb Corporation.

10. In essence, the premiums on policies are the product of rate times coverage (or limits). During the times when plaintiff owned the Chubb policies, defendants improperly increased coverages or limits and thereby charged excess premiums. These actions have injured plaintiff and class members.

11. Defendant The Chubb Corporation (sometimes "the parent") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 15 Mountain View Road, Warren, New Jersey. It is a holding company for a family of property and casualty companies known as the Chubb Group of Insurance Companies (the aforesaid "Chubb Group").

12. Defendant Federal Insurance Company ("FIC") is a wholly-owned, direct or otherwise, subsidiary of The Chubb Corporation. Chubb & Son, Inc. ("Chubb & Son"), a division of Federal Insurance Company, manages the companies that are the

4

constituents of the Chubb Group. FIC is the largest of The Chubb Group of insurance companies. Chubb & Son is FIC's principal operating arm. FIC's principal place of business is the same as that of The Chubb Corporation. FIC is dominated and controlled by or is an agent of The Chubb Corporation in respect of the premises herein.

13.     Defendant Great Northern is, as alleged above, a member of the Chubb Group, and as such wholly-owned, dominated and controlled by, or an agent of, The Chubb Corporation, direct or otherwise. Great Northern's principal place of business is the same as that of the Chubb Corporation, 15 Mountain View Road, Warren, New Jersey 07059. Its management is substantially management of The Chubb Corporation.

14.     Defendants Great Northern and FIC also are members of Chubb's Property & Casualty Insurance Group ("P&C").

15.     Non-party Chubb Indemnity Insurance Company is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 55 Water Street, New York, New York. It too is a member of Chubb's P&C Group, is wholly-owned, directly or otherwise, by The Chubb Corporation, is dominated and controlled by, or serves as an agent of, directly or otherwise, of The Chubb Corporation, and engages in the misconduct complained of.

16.     The following paragraphs show that the forms and practices employed by the parent by its insurance subsidiaries are, substantially, if not identically, uniform.

17.    The Chubb Corporation established the uniform contract language and practices that were of material assistance in the perpetration of the wrongs complained of. Each of the parent's insurance subsidiaries that sells the type of insurance that is the subject matter of this litigation engages in precisely the same misconduct, all under the dictation and as agents of the parent.

18.    In all respects complained of, the insurance subsidiaries in the areas that are the subject matter of this litigation act in accordance with authority granted unto them by the parent.

19.    The Chubb Corporation's participation in the creation of the contracts and practices respecting their implementation, its financial interests in the perpetration of the misconduct, as well as related statements, make it a party to the policies between the insured and the nominal issuer.

20.    There is substantial overlap, if not congruence, of The Chubb Corporation's senior management and that of the constituents of The Chubb Group. For examples, defendant John D. Finnegan, the President, CEO and a Director of The Chubb Corporation, also is Chairman of the Board and CEO of FIC, and of Chubb & Son. Defendant Thomas F. Motamed is the Vice Chairman and Chief Operating Officer of The Chubb Corporation, and President and Chief Operating Officer of FIC and of Chubb & Son. Messrs. Finnegan and Motamed have held their positions since at least 2002. Each

6

participated, aided, abetted, or conspired in the wrongs complained of, and is individually liable, regardless of whether any corporate veil is pierced.

21.  Finnegan's extra-parent services are not confined to FIC and Chubb & Son. The employment agreement dated January 21, 2003 between The Chubb Corporation and defendant Finnegan obliges him "to serve, without additional compensation, as an officer and director for each of the company's subsidiaries . . . and other affiliates . . . [t]he term 'affiliates' shall include any entity controlled by, controlling, or under common control with" The Chubb Corporation.

22.  The Chubb Corporation elected all the members of the FIC board, and those directors assured that the same board members serve on the same committees for both entities (Chubb Proxy 3/23/06 at p.6).

23.  The majority of the members of the boards and management of the subsidiaries are directors, or members of senior management of The Chubb Corporation, and the remainder hold comparable positions at FIC, or its division Chubb & Son.

24.  The Chubb Corporation Key Employee Deferred Compensation Plan (2005) defines "company" as "The Chubb Corporation and, for such other purposes as determined by the committee, shall include any subsidiary of The Chubb Corporation." (8K, 3/9/05) Eligibility for this and prior plans includes key employees of all the insurance subsidiaries. (14A, 3/23/01).

7

25.    Chubb's ability to pay dividends or otherwise satisfy its financial obligations, including the payment of interest and principal on debt obligations, "is dependent in large part on the dividend paying ability of its property and casualty insurance subsidiaries" (10K, 3/15/06 at F.29).

26.    In a five year $500 million revolving credit agreement, dated as of June 22, 2005, the parent and subsidiaries pertinent here are "considered as a whole" for all material purposes (e.g., "adjusted consolidated net worth", "material adverse effect"). (10Q, 8/8/05)

27.    On December 21, 2006, Chubb and the Attorney Generals of three states (New York, Illinois, Connecticut) announced was that they had entered into an "Assurance of Discontinuance" ("Assurance") respecting certain of Chubb's practices respecting payments to brokers in order to steer business to Chubb. The Assurance necessarily concedes that defendant The Chubb Corporation (sometimes "parent") and *all* of its insurance subsidiaries are as one, or at least that the insurance subsidiaries are dominated by or are agents of the parent, and act in concert generally. In the preamble, "Chubb" was defined as The Chubb Corporation "and its insurance subsidiaries". The Chubb Corporation was the sole corporate signatory, presumptively on behalf of all of insurance subsidiaries, of the Assurance.

28.    The Chubb Corporation's dominion over its insurance subsidiaries and power to have them act subject to the parent's direction and control are revealed by the

8

undertakings in the Assurance that the parent made on behalf of all "its insurance subsidiaries". (Again, in the preamble, "Chubb" was defined as The Chubb Corporation "and its insurance subsidiaries.") *Inter alia*, The Chubb Corporation agreed that it would train and educate *all* officers, executives, and employees of Chubb (that is, the parent and all of its insurance subsidiaries) above a certain level; on behalf of all the "insurance subsidiaries", the parent *committed* that "Chubb and its insurance subsidiaries" will maintain certain records and that all the "insurance subsidiaries" will direct their internal auditors to make them available to various government administrative entities. The parent *committed* that the "chair of the audit committee of Chubb and any of its Chubb's insurance subsidiaries" will meet with Superintendents of Insurance. The parent also *committed* on behalf of itself and all "its insurance subsidiaries" to cooperate fully in all examinations, and *committed* for itself and all of "its insurance subsidiaries" to cooperate with the attorneys general (Assurance, ¶¶33-40, pp. 38-42). The parent made numerous other commitments on behalf of itself and all its insurance subsidiaries that the attorney generals tasked to them. Alone, the document makes clear, certainly for pleading purposes, that The Chubb Corporation dominates and controls "all its insurance subsidiaries," that they serve as agents of the parent, and that they aid, abet, and act in concert with each other to generate premiums by improper means.

       29.    That The Chubb Corporation was the sole entity to have executed the Assurance and committed itself and all its subsidiaries to the actions identified in the

Assurance, is indicative, if not determinative, of both its dominance and that full relief requires inclusion of the parent and all of Chubb's insurance subsidiaries.

30.     It also is clear that the named individuals have ultimate responsibilities for corporate wide practices, like the one complained of.  The December 21, 2006 press release announcing the agreement quoted only one Chubb representative - defendant John D. Finnegan, Chairman and CEO of Chubb, among other intra-Chubb entities.

31.     A report dated May 15, 2003 by the State of New York, Insurance Department, respecting Chubb Indemnity, describes at Article 2 that company and certain defendants herein, informing that each is a member of the Chubb Group.

A.   The same document at page 4 presents the then members of the board of Chubb Indemnity. Of the thirteen persons listed there, seven are senior management at defendant The Chubb Corporation.

B.   The same document at p.11 confirms that Chubb Indemnity is wholly-owned by defendant FIC, which in turn is wholly-owned by defendant The Chubb Corporation.

C.  The same document at p.13 reports that defendant FIC, as the parent of the Chubb Group, acts as manager for the insurance business of Chubb Indemnity.

D.  The same document at p.6 states that The Chubb Corporation filed a consolidated federal income tax return on behalf of Chubb Indemnity and various affiliates.

E.   The same document at p.21 states that in Q4 2002, defendant FIC made a cash contribution to Chubb Indemnity's gross paid in and contributed surplus.

32.    The insurance subsidiaries are subject to the control of the parent, and regardless insureds justifiably believe that Chubb's insurance subsidiaries are acting as agents on behalf of defendant The Chubb Corporation, and that the parent is party to the policy contracts. The words, conduct, and forms expressed or used by defendants in dealing with the insureds, directly or through brokers, reasonably give rise to the appearance, and justifiable belief that each of the agents possessed authority to enter into the transactions and on behalf of the parent.

33.    For an example, the letter covering policy renewals is from Chubb. The individual insurance subsidiaries are not mentioned.

34.    In addition to the policies themselves, advertisements and commercials respecting Chubb typically refer just to "Chubb" or the "Chubb Group", which the parent controls. The individual insurance subsidiaries are not mentioned.

35.    The Chubb Corporation issues the standard form replacement cost policies through, *inter alia,* its insurance subsidiaries, including defendant Great Northern and non-party Chubb Indemnity. The parent obliges its insurance subsidiaries selling the policies at issue to use precisely the same forms, each of which has been copyrighted by Chubb & Son. Chubb & Son is a division of defendant FIC, a wholly-owned subsidiary of the parent. Chubb & Son manages the insurance subsidiaries that are members of the Chubb

11

Group, of which defendant Great Northern is a member. Those forms have been used for twenty years and more. Whether nominally issued by Great Northern or by another Chubb insurance subsidiary, each policy bears the Chubb logo prominently on each page, and The Chubb Corporation is ultimately responsible for its use, content, and the associated practices complained of.

36.    That the insurance subsidiaries, which the parent dominates and controls, are a unity is apparent from documents other than the Assurance. Chubb's standard form policies uniformly declare:

> "Chubb refers to the Insurers of the Chubb Group
> of Insurance Companies."
>
> "Chubb means the following companies on whose
> behalf this notice is given: [*inter alia*]
>
> Chubb & Son, Inc.
> Chubb Indemnity Insurance Company
> Federal Insurance Company
> Great Northern Insurance Company

37.    Chubb's standard form policies uniformly declare:

> "'Customer' and 'you' mean any individual who
> obtains a financial product from Chubb . . .."

38.    Chubb's standard form policies, without regard to the nominal issuer, uniformly declare that inquiries are to be made to "Chubb Personal Insurance - Warren, N.J." - individual subsidiaries are not mentioned.

39.    Chubb's standard form policies, without regard to the nominal issuer, uniformly address "Our Valued Customer" and are subscribed "Chubb Personal Insurance." All e-mails are to be directed to ____@Chubb.com. Subsidiary domain names are not mentioned.

40.    Inquiries seeking to modify the practices complained of are responded to in the name of Chubb, not the individual subsidiaries.

41.    At all relevant times and in respect of the activities complained of, the Chubb Corporation, directly or otherwise, had (1) complete domination and control of the subsidiaries named herein; (2) or used them as agents to perpetuate the practices complained of; (3) used the control to commit some wrong in contravention of plaintiff's and the class's rights; and (4) the control and its misuse caused the injuries complained of.

42.    (a)    The insurance subsidiaries depend upon the parent for their capitalization; (b) the parent and subsidiaries do not observe corporate formalities in material ways, including authorization of the parent to enter into the Assurance; (c) the parent, by its domination and control of the subsidiaries, entirely controls their financial affairs, including dividends, whether they remain solvent, whether funds are siphoned off; (d) the parent's dominance and control of the officers and directors of the subsidiaries assumes that the officers and directors do not function as such for the subsidiaries but for the parent; and (e) the insurance subsidiaries are mere facades for the issuance of the policies in question.

43.    The individual defendants, as the most senior executives of at least both The Chubb Corporation, FIC (the largest of the Chubb Group of insurance companies), and of Chubb & Son, the division of FIC that manages the companies of the Chubb Group, are and have been active participants and are otherwise charged with responsibility for the misconduct complained of.

44.    Each of The Chubb Corporation's insurance subsidiaries is a mere instrumentality of the parent, and if the parent were excused from these proceedings, the practices complained of would persist through subsidiaries other than the one that nominally issued the plaintiff's policy. That would work a grave injustice and be fundamentally unfair to the thousands of other policy holders, and the need to include the parent in the proceedings and in any relief obtained is precisely why the Attorneys General of New York, Connecticut, and Illinois extracted the commitment of the parent to assure compliance by the insurance subsidiaries.

## THE PRACTICES COMPLAINED OF

45.    Beginning no later than 1999 and continuing without interruption to February 2006, plaintiff purchased replacement cost homeowners' insurance policies from Chubb that provided coverage for, *inter alia*, plaintiff's house and for his coop.

46.    The policy contracts themselves are, and the parent dictates that they be, uniform for all Chubb insurance subsidiaries that sell the subject insurance. The forms have been copyrighted by Chubb & Son, parts as long ago as 1984, and The Chubb Corporation

14

is responsible for their content. Chubb has used and continues to use the standard forms in connection with all replacement cost insurance sold in this State ("standard form policy" or "standard form policy contract"). The parent also has dictated the practices by the subsidiaries in respect of those parts of these policies that are the subject of this litigation.

47.    The policies are adhesion contracts. Chubb prepared them, and the insured have, for example, no say in the language of any of them, nor in the entitlement to renew the policies for the same coverage.

48.    Annual premiums for replacement cost policies theoretically are based on the estimated replacement cost, not market value, of the dwelling and its contents, or in the instance of a cooperative its contents. The policy sets forth a policy coverage amount for each of "dwelling" and "contents" in respect of the house and for contents only in respect of the coop. Typically, cooperatives are not insured for "dwelling" because the owner's liability does not extend to the exterior walls.

49.    Chubb's standard form replacement cost policy contracts addresses increases in coverage at two places - "Amount of Coverage" and "Payment Basis." At the former, Chubb states: "With your consent, we may change [the coverage amount] when the policy is renewed, to reflect current costs and values * * *  At the time of the covered loss, your amount of house coverage will include any increase in the United States Consumer Price Index from the beginning of the policy period."

15

50. The other reference is under "Payment Basis". In respect of Extended Replacement cost policies, Chubb states that, "you [the insured] agree that we may change the amount of the policy for each house [covered] when appraisals are conducted." Typically, Chubb will allow first-time insureds to name their coverage. During the first coverage year, Chubb will then appraise the house, and thereupon impose greater coverage and premiums. Chubb omits to disclose what appraisal methodology will be used.

51. The provision requiring the "consent" of the policyholder is a sham. The renewal policy with increased coverage (and in turn increased premiums) is given to the policyholder on a take it or leave it basis. Defendants never send a request for consent regarding changes in house and contents coverages, much less one that informs of the reasons for the requested change or even of the fact or amounts of the changes. Nor is the policy holder permitted to deny "consent" and maintain coverage. Chubb has, however, for several years misleadingly featured that the renewal policy represents an "annual premium savings".

52. Although this provision is sometimes be referred to "inflation guard coverage", it is not. The policy holder does not have the right to an increase in coverage, or limits, and when Chubb changes the amounts of coverage, the changes are not mandated by an objective, independent measure. Chubb maintains that it can increase the amount of coverage (and in turn premiums) without regard to an accessible, objective index. Indeed, Chubb manufactures the increases in coverage according to their secret methodology.

53.    Generally, two variables can determine premiums. One is the premium rate, which is not at issue here. The other is coverage to which rates are applied. An increase in the coverage amount ostensibly justifies increases in premiums, and throughout the class period increased premiums have accompanied increased coverage. This action challenges the increases in coverage that Chubb has enacted.

54.    Generally, increases in coverage lead to increases in premiums.

55.    Chubb's replacement cost policies respecting coop's do not contain the language concerning increases that appears in policies concerning houses. Both policies however state under the headline **"Renewals"** that, if the insured fails to accept a renewal "at the premiums and under the policy provisions in effect at the date of renewal" (Y-1), the policy will be terminated. As explained below, this provision and its implementation violate New York statutory law.

56.    Chubb omits to disclose that it will not permit the policyholder to keep coverage amounts unchanged year to year, and as explained below, Chubb's coverage increases often violate insurance law.

57.    The language at the Renewals section omits to disclose that the "policy provisions in effect at the date of renewal" invariably include an increase in coverage or limits that invariably carries an increased premium.

58. The language at the Renewals section omits to disclose that under New York law Chubb cannot decline to renew if the insured declines to accept an increase in coverage and premiums. (A similar omission is a section headlined "**Non-Renewal**" (Y-7)).

59. Policyholders pay the premiums in ignorance of how the underlying coverages were calculated. (Chubb actually adjusts coverages according to its own internal methods.) These methods are not available to the public, and Chubb does not disclose to the public either that it is using an internal, secret methodology or, of course, how the calculations came to be made.

60. Chubb's standard form policy contract for houses leads the insured reasonably to believe that the change in amounts at point of renewal will reflect the "current effect of inflation" as governed by the United States Consumer Price Index, which Chubb explicitly says at two places in the standard form policies is how increases in coverages are determined.

61. Chubb systematically breaches the agreement to increase coverage only upon consent, or to limit changes to "current costs and values", and as alleged below not to impose increases in coverage or premiums in New York in violation of statutory requirements during a statutorily mandated period.

62. In implementing this take it or leave it policy embodied at the Renewals part of the Chubb standard policy[1], Chubb does not delimit coverage or premiums by the

---

[1] "We or our agent may offer to renew this policy, at the premiums and under the policy provisions in effect at the date of renewal. We can do this by mailing you a bill for the premium to

18

need for appraisals, "current costs and values", or as shown below, the only inflation benchmark mentioned in the policy.

63.    In the "Amount of Coverage" section of the policy for houses, the standard form policy states:

> During the policy period, the amount of coverage will be increased daily to *reflect the current effect of inflation. At the time of a covered loss, your amount of house coverage will include any increase in the United States Consumer Price Index ["CPI"] from the beginning of the policy period.* (Emphasis supplied.)

64.    The CPI is the only inflation index mentioned in the policy, Chubb concedes the utility of this index for measurement of replacement costs as it uses the index to do precisely that.

65.    Chubb's standard form policy contract omits to disclose that its coverages (and premiums to the extent their increases depend upon changes in coverages) increase at rates substantially in excess of the CPI.

66.    Since 2000, Chubb's premiums have increased annually by approximately 150% to 850% that of the CPI, and substantially more than other widely recognized indices; the percentage by which premiums increase generally surpasses the rate at which coverage increases.

---

the address shown in the Coverage Summary, along with any changes in the policy provisions or amounts of coverage. If you do not accept our offer, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer."

67.     Coverage for houses is divided into two parts, "dwelling" and "contents", with a single aggregate premium being charged and paid for both. Since at least 1999, Chubb has imposed precisely the same percentage increases on the "dwelling" and on the "contents" parts of coverage. That home and contents insurance coverages increased at the same rates would cause reasonable consumers to believe that both were being considered at some general inflation rate that considered the value of all the insured property. That is not so, however. As defendants have conceded in their Brief for Defendants-Appellees in *Spagnola v. The Chubb Corporation et al,* 07-1296-cv, at * 39-42 (2d Cir. July 10, 2007), both were inflated solely by reference to defendants' housing considerations, a tell-tale that coverage for contents was being inflated wrongly. Absent the use of an omnibus inflation index, which defendants concede was not employed, whatever indices are used, the costs to replace "homes" and "contents" have not increased at precisely the same rates. That is, "the current effect of inflation" cannot possibly have been the same for both "home" and "contents", nor are changes in "current costs and values". If anything values of contents often decline. Thus, Chubb's practice of arbitrarily setting a limit for contents at 50% of the limit or coverage for the home is arbitrary; moreover, Chubb does so without expressly notifying the policyholder of how it is valuing contents.

68.     Applying some of the increased coverage to "contents" thus also has the effect of masking the increase in "dwelling" coverage.

69.    The foregoing practice is in breach of Chubb's contractual promise to determine coverage by "current costs and values."

70.    Chubb omits to disclose both the foregoing practices and that it does not employ a single index to value both "dwelling" and "contents".

71.    Chubb's unilateral, annual determination of house and contents coverages, made pursuant to its secret formula, at once breaches its contractual promise to limit increases "to reflect current costs and values", makes the promise part of a misleading practice, and violates the insurance law as described below.

72.    The policy, as described above, in respect of houses also explicitly requires the insured's *consent* to increase coverage (and by implication, premiums) under the extended replacement cost payment variation, Chubb routinely: (a) imposes increases on both houses and contents coverage in the absence of any appraisal; and (b) imposes increases on contents coverage in the absence of any appraisal of contents.  In effecting these changes, Chubb systematically fails to seek consent, much less informed consent.

73.    In respect of contents for coop's, Chubb arbitrarily increases coverages. For example, in each of the years 2002-2004, Chubb increased the coverage of the coop contents approximately 40% more than it increased the coverage for the plaintiff's house.

74.    N.Y. Ins. Law §§ 3425(a)(7) and (c)(2)(E) make all homeowners insurance policies subject to a "required policy period [ ] of three years from the date as of which a covered policy is first issued or voluntarily renewed".

21

75.     During the "required policy period," insurers are required to offer renewals to customers on the same terms as the original policy.

76.     Chubb's standard form policy contract explicitly but incompletely incorporates N.Y. Ins. Law §§ 3425(d)-(e), and Chubb's policies incorporate the substance of this law.

### Nonrenewal

... During the first three years after the original effective date of the policy ... we may decline to renew this policy only on grounds for which we could cancel it.

### Conditional Renewal

If we have the right to cancel or refuse to renew this policy, we may instead ... condition continuation by a change of limits or elimination of any coverage which is not required by law.

77.     Chubb breaches this provision of the policy contract and underlying insurance law. It does not refuse to renew solely on grounds for which it could cancel, but conditions renewals - even during the three year required period - on greater coverage and premiums. Chubb always and during the three year required policy periods conditions renewal of its standard form policies on acceptance of greater coverage and premiums.

78.     The three year required policy period acknowledges the investment made by customers in selecting an insurer and policy, their trust in their brokers, inertia, the

22

imbalance in negotiating power between the parties, and the arcane nature of the insurance world. It also is obliged by N.Y. Ins. Law §3425, discussed below.

79.    Where Chubb may seek increases in coverage, N.Y. Ins. Law §3425(d) obliges that "the specific reason or reasons for nonrenewal or conditional renewal shall be stated in or shall accompany the notice."

80.    Chubb breaches this undertaking and the law by not providing "the specific reason or reasons" for renewals conditioned on acceptance of greater coverage and premiums, including how Chubb has calculated increases in coverage or premiums.

81.    By conditioning renewal of policies on acceptance of increases of coverages and of the premiums charged, Chubb breaches its contract with plaintiff and the class, and also violates §§ 3425(a),(d) and (e), as described above.

82.    The Chubb standard form policy contract states that the policy is deemed amended if it conflicts with the laws of New York for those who live in the State.

83.    Chubb breaches this provision. The policy contracts conflict with laws of New York, including N.Y. Ins. Law §3425, as aforesaid, but Chubb does not deem the policies amended accordingly.

84.    Chubb conceals its practices respecting annual increased premiums by also increasing the amount of coverage. This practice creates the illusion that increased coverage necessitates the increased premium. Chubb will not renew policies at the prior year's coverage or premium, a fact that Chubb does not disclose in its standard form policies.

85.    Chubb conceals its practices complained of by nowhere in the policy disclosing the basis upon which coverage and premiums are calculated, apart from the reference to CPI in the houses policy, which Chubb does not follow in practice, and the amorphous "current effect of inflation" or "current costs and values".

86.    The Chubb renewal policies disclose neither the previous year's coverages, nor the previous year's premiums, nor the basis upon which the increases were calculated, nor a reference to any index other than the CPI.

87.    Beginning no later than 2004, Chubb's standard form policies have stated that the insured's renewal policy generates "annual premium savings". The statement is false and misleading in concealing the fact, much less the magnitude, of the increases.

88.    For several years, Chubb's premium summary renewal pages have, however, misleadingly stated that your policy "includes an annual premium **savings of [N]** as listed below" (emphasis in original). In truth, the premiums have increased year over year, a fact nowhere described in Chubb's standard form policy contracts.

89.    There is no indication below on that page - or anywhere in the renewal papers - what the prior year's coverage or premium was, leading the policyholder to believe that premiums actually decreased year over year.

90.    Chubb's standard form "Premium Summary Renewal" states, "We are pleased to enclose your Chubb Masterpiece Policy, *customized to provide the coverage you requested*" (emphasis supplied). The emphasized portion of the statement, included in every

24

such Chubb document since 1984, is false. Typically, after obtaining the initial policy, the insured has not "requested" the increased coverage, but must acquiesce to it and the concomitant increased premium. And to the extent Chubb undertakes to customize insurance (as insured request??), Chubb breaches that.

91.     Chubb's practices are inherently deceptive in that conditioning renewals on acceptance of increases in coverages (and in turn premiums) often is precluded by statute.

92.     Chubb's renewal practices as described above are materially deceptive to its customers, allowing Chubb impermissibly to circumvent other statutory constraints on its ability to charge premium rates by arbitrarily increasing the coverage to which those rates apply. Among other ways:

   (a)     Chubb omits to disclose that it increases the covered amounts of "dwelling" and of "contents" of its homeowners policies by amounts unrelated to the costs of replacing the home or contents.

   (b)     Chubb omits to disclose that it increases the covered amounts of its homeowners policies by amounts that do not "reflect current costs and values".

   (c)     Chubb omits to disclose that increases in the amounts "home" and "contents" coverage do not correspond to the "current effects of inflation."

   (d)     Chubb omits to disclose that it increases the premiums it charges for its homeowners' policies by amounts unrelated to either the increase in the covered amount or the costs of replacing the home.

(e)    Chubb omits to disclose that its appraisals will result in substantially greater coverage than the insured had initially requested;

(f)    Chubb omits to disclose that it will not permit insureds to renew with the same coverage;

(g)    Chubb omits to disclose that customers have certain rights under law to be informed of the reasons for adjustments in coverage and premiums, including the method for calculating the increase;

(h)    Chubb omits to disclose that it does not and will not abide by New York Insurance Law; nor that it will not and does not amend the policy if it conflicts with New York Law.

(i)    Chubb omits to disclose that increased coverage and premiums bear no mutual relationship and are not determined by the CPI.

(j)    Chubb omits to disclose that coverage and premiums increase at rates substantially greater than either the CPI, and often, the amounts of increased coverage.

(k)    Chubb omits to disclose the specific reasons for conditional renewal upon condition of acceptance of the increased coverages and premiums.

(l)    Chubb omits to disclose that changes in amounts of coverage and premium will not depend upon the insured's consent.

(m)    Chubb falsely states that the increased coverage and impliedly the increased premium respond to an insured's request.

(n)     Chubb omits to disclose that it has suborned the insurance brokers through whom insureds acquire insurance.

(o)     Chubb represents, falsely, that renewals have been "customized to provide the coverage you requested." In fact, the renewals at greater coverage are take it or leave it.

(p)     Chubb represents falsely that the current policy includes a premium saving.

(q)     Chubb fails to disclose that for house "contents" are automatically valued at 50% of the value of the insured home, and that "contents" coverage automatically increases with "home" coverage.

(r)     if Chubb seeks to avoid liability on the ground that the various subsidiaries are separate and distinct legal entities, then Chubb has falsely represented that it is ultimately accountable to policyholders.

93.     Insureds are entitled to look to their brokers for advice and information concerning insurance. That is not possible here. Chubb's commission structure with brokers through whom the policies in question are sold is designed to and does suborn brokers into violating their duties to provide the best priced policies available. Its standard commissions are a percentage of the premiums charged to the insured for the policy. Chubb also pays additional, contingent on "the producer meeting pre-established goals for profitability, retention and/or growth standards" (www.chubb.com/marketing/chubb2887.htlm). The Assurance among Chubb and the attorneys general arose out of other corruptive Chubb commission relationships with brokers that lead to the "steering" of business to it.

94.    As Chubb drafted the standard form policy contracts, all ambiguities are to be construed against it.

95.    Chubb's deceptive acts or practices are and have been knowing and willful. Chubb routinely indemnifies insured homeowners the cost of repairing or rebuilding their homes and in doing so must be familiar with the effect of inflation on these costs. The policy contract itself specifies that the CPI is to be used to determine increases in the coverage amount during each annual policy period. Deviations from CPI must have been intentional. So must deviations from "current costs and values" and "current effects of inflation". Chubb's refusal to abide by N.Y. Ins. Law §3425's strictures on renewals during restricted periods, on explanations to be provided to insureds, and its false form statements that the insured requested the increased coverage - and by implication the increased premium - necessarily are willful.

96.    Defendants, and each of them, have aided, abetted, and conspired with one another in all of the practices complained of. The purpose of the conspiracy is to secure greater premiums than otherwise would be obtained, and actual concert is demonstrated herein respecting uniform acts, practices, documents, breaches of contract, violations of N.Y. Insurance Law, and deceptive practices.

97.    The acts and practices challenged are consumer-oriented; deceptive or misleading in material ways; causes and have caused plaintiff and class members to suffer injuries, and are ongoing.

28

## CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this class action pursuant to Rule 23(b)(2)(3) of the

Federal Rules of Civil Procedure on his own behalf and on behalf of all other members of

the class (the "class") described below:

> All persons or entities who from six years prior to
> the commencement of this action to the present
> and including other persons who may be injured
> by the wrongs complained of during the pendency
> of these proceedings ("the class period"),
> purchased replacement cost insurance policies
> from Chubb, through any of its wholly-owned
> subsidiaries, including defendant FIC and its
> wholly-owned subsidiaries, including Great
> Northern, respecting property located in the State
> of New York and who either have been injured by
> the practices complained of or who are at risk of
> suffering injuries by the practices complained of.

99.    The class excludes defendants, their parents, subsidiaries, affiliates,

officers, directors, and employees.    Also excluded are any federal, state or local

governmental entities, any judge or judicial officer presiding over this matter, judicial staff,

and the members of their immediate families, and any lawyer, or members of a lawyer's firm,

representing any named plaintiff in this action.

100.    In the year ended December 31, 2006, The Chubb Corporation sold in

excess of $2.2 billion of homeowners insurance premiums.    New York's ratable share of

homeowners' replacement merit cost insurance assures that the class is so numerous that

joinder of all members is impracticable. Members of the class are geographically dispersed

throughout New York, and include those who reside outside, but insure second homes within, the state.

101.   Plaintiff's claims are typical of those of the class because plaintiff and all class members were injured by Chubb's common course of conduct towards its customers, or are at risk of further injuries.

102.   Chubb makes use of its own copyrighted form contracts for its homeowners insurance policies. These forms are identifiable by ID number. The contracts employ uniform language respecting policy renewal - the central subject matter of this suit.

103.   The class is so numerous that joinder is impracticable. Alone, Great Northern had at least 25,000 replacement cost home owner insurance policies in force in 2006 in New York.

104.   There are numerous questions of law and fact common to the class that predominate over any questions affecting only individual class members. These questions include:

    a.    Whether Chubb utilizes form policy contracts;

    b.    Whether Chubb's standard form policy contract is one of adhesion;

    c.    Whether Chubb has had substantially uniform practices regarding increases in coverage and premium;

    d.    Whether Chubb allows customers to negotiate the coverage and premiums and related provisions of renewal policy contracts;

e.  Whether Chubb will demand that renewals include greater coverage (and premiums);

f.  Whether Chubb has increased coverage and premiums by rates greater than the CPI, current effects of inflation, or current costs and values;

g.  Whether Chubb has increased premiums at rates greater than the CPI;

h.  Whether Chubb issues policies knowing that its appraisal practices will result in increased coverage (and premiums);

i.  Whether Chubb has increased coverage and premiums for homes without appraisals;

j.  Whether Chubb has increased coverage and premiums for contents without appraisals;

k.  Whether Chubb has increased coverage and premiums without the consent of the insured;

l.  Whether Chubb misrepresents that the insured requested increased coverage;

m.  Whether misrepresentation that the insured requested increased coverage implies to the reasonable person that the insured also requested or implicitly accepted the increased premium;

n.  Whether Chubb misrepresents that the renewals of the policy result in annual savings.

o.  Whether the alleged conduct violates N.Y. Ins. Law § 3425;

p.  Whether such increases constitute materially deceptive or misleading conduct;

31

q.    Whether Chubb has breached and continues to breach its contracts with plaintiff and the class;

r.    Whether the alleged conduct violates N.Y. Gen. Bus. Law §349;

s.    Whether plaintiff and members of the class are entitled to damages and the appropriate measure of such damages;

t.    Whether plaintiff and the class have a claim for unjust enrichment; and

u.    Whether plaintiff and members of the class are entitled to injunctive relief.

v.    Whether the actions and injuries complained of are part of a conspiracy.

w.    Whether the insurance subsidiaries are agents or instrumentalities of the parent in the misconduct complained of.

x.    Whether the parent should be liable for the actions of the subsidiaries.

105.    Plaintiff is an adequate class representative.  His claims are typical of the claims of class members.  Plaintiff has no interests adverse to or which irreconcilably conflict with the interests of other members of the class and has engaged competent counsel.

106.    Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced and competent in the prosecution of complex class action litigation.

107.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy and substantial benefits will derive from its proceeding as a class action. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require. Class treatment will permit the adjudication of relatively small claims against a large corporate defendant. Absent a class action, class members would likely have no remedy. The amounts in controversy *per capita* do not exceed $5,000 in most instances, and it would not be realistic to suppose that numbers could or would take on either defendant, entities with annual revenues in excess of $2 billion and assets in excess of $40 billion. There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient group-wide adjudication of this controversy, and the other elements of Rule 23(b)(3) are satisfied.

108.    Class members are readily identifiable from records that Chubb maintains of their identities, the type of coverage, amounts of coverage and premiums imposed and paid.

## COUNT I

### N.Y. Ins. Law §3245

109.   Plaintiff repeats and realleges the prior allegations.

110.   Chubb has violated and continues to violate N.Y. Ins. Law §3425 as alleged.

111.   Chubb's violations of §3425 have injured plaintiff and members of the class by the imposition of needless, excessive, or otherwise impermissible premium payments.

112.   Accordingly, all increases in premiums that Chubb has obtained in violation of §3425 must be refunded.

## COUNT II

### Breach of Contract

113.   Plaintiff repeats and realleges the prior allegations.

114.   By its standard form policy contracts, Chubb agrees, amongst its other obligations, to abide by New York Insurance Law, and thereby unconditionally to renew the policy during the three year required policy period, mandated by N.Y. Ins. Law §3425. Chubb breaches this agreement.

115.   By its standard form policy contracts, Chubb agrees that for a statutorily mandated three year period, it will decline to renew only on grounds for which Chubb could cancel the policy.

34

116.    Chubb breaches this agreement by cancelling the policy if insured's do not accept - on a take it or leave it basis - greater coverage and premiums.

117.    The standard form policy contracts state that any increase in coverage amount - and by implication, increases in premium - may be made only with the consent of the insured. Chubb breaches this agreement because it neither seeks nor receives the consent of plaintiff or the members of the class for its unilateral coverage and premium increases. Chubb will not issue renewal policies where the homeowner refuses to consent to the increases of coverage and premium.

118.    Chubb's standard form policy contract for houses provides that changes in the coverage amount, if made, are to "reflect current costs and values," and "current effects of inflation". Chubb breaches this agreement because the changes made to the coverage amount on the policies of the plaintiff and the members of the class substantially exceed either measure.

119.    Chubb's standard form policy for houses reasonably leads insureds to believe that increases in coverage, and by extension, premiums, will be limited to the CPI. Chubb breaches this agreement.

120.    During the class period, Chubb's coverage amount and premium increases have outpaced the United States Consumer Price Index, the only index concerning cost increases mentioned in the standard form policy contracts.

121.   Chubb's standard form policy contract for houses provides that the insured consents to increases in coverage only following an appraisal.

122.   Chubb breaches the foregoing provision: (a) by increasing coverage and premiums for home and for contents with no appraisal; and (b) by increasing contents without any appraisal of them.

123.   Chubb's standard form policy contracts purport to adopt New York Insurance Law, which, in part, provides that "the specific reason or reasons for non-renewals or conditional renewal shall be stated in or shall accompany the notice." Chubb breaches this provision by doing neither.

124.   Chubb's standard form policy contracts purport to adopt New York Insurance Law which, in part, provides for a three year period during which the right to impose changes in coverage is restricted.   Chubb disregards the restriction, always maintaining that it can cancel the policy unless the policyholder accepts the changes.

125.   To the extent any of the terms in the policy contracts are ambiguous, New York law requires the terms to be interpreted in favor of the plaintiff and the class as the insureds and against Chubb as the insurer and also because Chubb drafted the copyrighted standard policy contract.

126.   As the standard form policy contracts are ones of adhesion, any doubts or ambiguities are to be construed against the insurer.

127.   The foregoing breaches of contract are material and have caused and continue to cause plaintiff and the members of the class substantial damages, for which the class members are entitled to recovery.

128.   The breaches are ongoing, warranting injunctive relief.

## COUNT III

## Deceptive Practices Under N.Y. Gen. Bus. Law §349

129.   Plaintiff repeats and realleges the prior allegations.

130.   N.Y. Gen. Bus. Law. § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

131.   Intent to defraud and justifiable reliance are not elements of this statutory cause.

132.   N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater ... The court may award reasonable attorney's fees to a prevailing plaintiff."

133.   Chubb's acts or practices complained of are consumer-oriented; misleading in material ways; and caused and continue to cause plaintiff and the members of the class to suffer injuries of a pecuniary nature.

37

134.   Plaintiff and the class seek damages for their injuries caused by these violations in an amount to be determined at trial.

135.   Defendants' conduct, as described above, entitles plaintiff to an award of attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349(h).

## COUNT IV

### Unjust Enrichment

136.   Plaintiff repeats and realleges the prior allegations.

137.   It is considered unjust enrichment under the common law of New York for a defendant to retain a benefit that in equity and good conscience should not have been obtained or possessed because it rightfully belongs to another.

138.   Chubb has benefitted and continues to benefit from the payment of excess premiums obtained by its unlawful acts.  Chubb remains in possession of these proceeds.  It would be inequitable for Chubb to retain the benefit of these overpayments because these funds belong to the members of the class.

139.   Plaintiff and the class are entitled to the return to each of the overpayments as damages or restitution.

## COUNT V

### Injunctive Relief

140.   Plaintiff repeats and realleges the prior allegations.

141.   The ongoing misconduct warrants the imposition of injunctive relief.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff and the class pray for judgment against each defendant, jointly and severally, as follows:

a.  awarding plaintiff and the class damages in amounts to be calculated representing amounts that have been paid in violation of N.Y. Ins. Law §3425;

b.  awarding plaintiff and the class damages in amounts to be calculated and that represent refunds of that portion of the premiums paid that do not reflect the CPI, or that were otherwise made in breach of contract, including violations of N.Y. Ins. Law §3245;

c.  awarding plaintiff and the class their actual damages from Chubb for its violations of N.Y. Gen. Bus. Law § 349;

d.  awarding plaintiff and the class those portions of premiums paid that represent unjust enrichment;

e.  the conduct complained of is ongoing and continues to threaten plaintiff and members of the class to further injury;

f.  injunctive relief to halt the practices complained of;

g.  interest to the fullest extent permitted by law;

39

h.    granting plaintiff and the class the costs of prosecuting this action, together with interest and reasonable attorneys' fees, pursuant to the common fund doctrine and N.Y. Gen. Bus. Law § 349; and

i.    granting such other and further relief as the Court deems just and proper.

Dated:    January 9, 2008

**KIRBY McINERNEY, LLP**

Roger W. Kirby (RWK 4503)
Edward Varga (Admission Pending)
830 Third Avenue
New York, New York 10022
Tel: (212) 371-6600

Attorneys for Plaintiff

40